We have one case on for argument today, number 2007-5115, Klamath Irrigation District against the United States, Mr. Marzullo. Thank you, Your Honor, and good morning to members of the Court. It's a pleasure to be back here again, even on the same case. When last we met, there were a number of outstanding issues of Oregon law. The Court, subsequent to the oral argument, decided to certify several of those questions to the Supreme Court of Oregon. We now have the responses of the Supreme Court of Oregon to those certified questions, and I think what they make clear is that the trial court erred, but it dismissed the claims for the taking of the beneficial interest in Klamath Project water rights. Marzullo, let me just ask you, I just have a couple of questions. I'm sorry for jumping in on you in the wake of the Oregon opinion, there are just a couple of things I wanted to discuss. First of all, are the takings, compact, and breach of contract claims that your clients are asserting, are those alternative claims for all plaintiffs? No, they are not, Your Honor. The contract claims actually exist only on behalf of the water districts, the irrigation districts. The taking claim exists only on behalf of the individual water users, as does the Klamath Compact claim. So they're actually separate claims, separate plaintiffs. Okay, fair enough. So the districts, so in other words, the only way the individual water users can recover is by a takings or a compact claim. Correct, Your Honor. And the districts are covered solely by the contract claims. That's correct. Okay, that's helpful. So, what the Oregon Supreme Court, I think, has clarified now for us is that contrary to the position taken by the government and adopted by the trial court, the 1905 Oregon statute did not preclude the acquisition of a beneficial water right in the irrigators, and that, in fact, under Oregon law, the principles, the three factors that relate to the acquisition of such a beneficial water right, which is a property right, of course, under Oregon law, all indicate that, in fact, this property right does exist. We think that on the basis of that decision, it is now appropriate for this court to reverse the trial court on the two causes of action that we just discussed, the taking and the claim of compact claims, to determine that ... I just want to clarify, and I'll get to where you're going there, but none of the individual or any of the individual landowners in this case, I take it they're not covered by the district plaintiffs, in this case, contracts. That's correct, Your Honor. The contracts that the districts have relate to, first of all, the repayment of the original cost of constructing the facilities, and second, to the maintenance and operation of the actual physical works. The landowners don't have any contracts with the districts. That's correct, Your Honor. I'm sorry, with the United States? With the United States, yes. That's right. The landowners do not have contracts with the United States, and the individual name landowners aren't beneficiaries of the district contracts. Well, the trial court held, and we did deal with this issue. They are third-party beneficiaries of that contract, which of course only means that they have standing to enforce a contract that they are not a party to. But you said they can only recover by the takings of the compact claims. Well, I think that's right, and maybe you've just pointed out that I stopped a little bit short there, Your Honor. The individuals would have the right to pursue, or to prosecute, a breach of contract claim on behalf of the districts. That, however, is not their principal claim. Their claim, in the way that we have phrased, have put forward this lawsuit, is for taking and breach of the claim of the compact. Now, Mr. Marzullo, you said that the Arvind Supreme Court had taken care of all three portions of, if I understand your position, of what was necessary to establish the property interest. Yes, Your Honor. They left open, as I read the opinion, the question of whether there were any contractual givebacks, so to speak. I know your position is there's nothing in this record that would support a conclusion that there are such, but they did, as I understand it, leave that question open. Well, they did, Your Honor, and I think what the Oregon Supreme Court said is there is mention of contracts at some length in the trial court's opinion. Right. And so out of an abundance of caution, rather than trying to make some ruling based on that discussion, they said, well, you know, maybe there's some contract we don't know about, so we won't rule on that issue. I think had they examined the question a little more closely, had they asked the parties perhaps in briefing or oral argument, they would have discovered what I just discussed with Judge Schall, and that is that there are no such contracts, and therefore that is a non-issue in this case. Well, we'll see whether your opposing counsel agrees with that proposition. Well, I suppose we will, although I don't think there is any disagreement with the proposition that the individuals in this case have no contracts. Where I think the Oregon Supreme Court perhaps stopped short in its analysis was the failure to distinguish between the districts and the individuals, and that in some measure was perhaps because the question dealt with both the districts and the individuals, but they're really two entirely different issues. Understood. So how would the beneficial interest then arise for the individual users of the water? Well, the Oregon's contract... Let me finish the second part. Would they be able to say that their beneficial interest arises under the contract with the distributors or directly as a beneficial user? I think it is the latter, Your Honor, and I think that's what the Oregon Supreme Court told us, that there are three factors involved in the establishment of a beneficial water right under Oregon law. The first is, did the water users put the water to beneficial use in irrigating their lands? Well, of course, we know the answer to that is yes, and they've been doing that for 100 years. The second question is, does the relationship between the United States and the water users indicate an intention to establish this beneficial water right in the individuals? Again, the Oregon Supreme Court answered yes, and they got there by way of an analysis that says the 1905 statute, the Oregon statute, was intended to implement and facilitate the 1902 Reclamation Act that the government had passed, that Congress had passed, and that under the 1902 Reclamation Act, the intention of Congress was to create this relationship in which the United States does the appropriation and the individual irrigator puts the water to beneficial use. However, the Oregon Supreme Court came up with the trust theory. The beneficiaries were the recipients of the trust, beneficial interest. Now, under established law, the United States cannot be a trustee unless it's specific to that relationship. I don't see any language in 1905 or the 1909 or the 1902 statutes which would establish the trust upon which the Oregon Supreme Court based a portion of its opinion. If I may, Your Honor, I think what the Oregon Supreme Court said is this is similar to a trust. What's important to deal with there is the division between legal title and beneficial ownership, which is similar to the way a trust is established. The court talked about a long history of situations in which one individual makes the appropriation for the benefit of the water users. One person does the appropriation. Another person puts the water to beneficial use on the land. If that were not allowed under Oregon law, then in fact the appropriator would hold the water but wouldn't have any use for it. Here, the water was appropriated for irrigation and related purposes on Klamath Project land. The United States doesn't now own or irrigate any Klamath Project land, so it would hold a water right that it had no use for and the irrigators would have the land but no water to irrigate it. Is this the same relationship between the federal government and the water users that was at issue in the Nevada case? Absolutely, Your Honor, and that's exactly what the Oregon Supreme Court said. Contrary to what the trial court held and what the government has always contended in this case, the Oregon Supreme Court made clear that the law in Nevada is the same as it is in Oregon with respect to this beneficial use with respect to this relationship. So the relationship, whether you call it a quasi-trust or something else, was a relationship that the Supreme Court said could validly be imposed on if that's the right term on the United States. Precisely. Whatever you call that relationship. I think the key point was that there is a division of legal and equitable title and that that equitable title, that beneficial water right, is in fact a property right. Your turn. What was the Oregon Supreme Court meaning then when they said that we then explain why beneficial use alone is not sufficient to establish an equitable right? What are we getting to at that point? They seemed to think that this court was asking whether beneficial use in the face of, say, a statute that said or that intended that the irrigators not get a beneficial water right or in the face of a contract that might have said irrigators do not get any water right, whether beneficial use would have by itself nevertheless established a beneficial water right. Does that mean that the individual users would need to establish by contract that they have a beneficial interest or would the government then have to come forward and saying there was no beneficial interest arising out of that contract? It's the latter, Your Honor. That is to say, all the Oregon Supreme Court said is contract is really part of the relationship question. They were dealing with really two paradigms. One situation in which you had a mutual water company, a nonprofit entity, an irrigation district where clearly the district was not intended to own the water right and the beneficial interest was intended versus, and they had this one case, the Walla Walla case, in which you have a for-profit company that owns the water right and sort of sells it in blocks, in quantities, to different people, sort of like you and I pay a water bill every month. What they said is in that situation, in the Walla Walla situation, where the arrangement clearly did not contemplate that there would be an impertinent water right, that there would be a beneficial interest, then in that for-profit kind of situation, the district beneficial interest would not arise. Is that the only distinction that would arise, then, is the for-profit or not-for-profit? Well, if there were a contract, and that's what the Oregon Supreme Court said. They said everything that's in the record that we know of indicates that there is a beneficial water right in the irrigators. But we don't know because the trial judge talked about all these contracts that we don't have before us. Does that mean that the trial, assuming we remand it to the trial court, based upon that assumption, would the trial court have to take a look at each and every contract at that point to make that determination? Well, there are no contracts to look at, Your Honor. That's the point. That the only contracts that exist are between the district and the United States. There are 14 of those, I believe, and they deal with the interest rate on repayment of the original facilities and on how the water will physically be delivered through the canals and who's in charge of auditing and when there will be inspection. They do not deal with this issue. So that would be a distribution right to the irrigation districts? Yes, it is an arrangement because the Reclamation Act, Your Honor, provides that although the United States retains title, it may enter into agreements to have local irrigation districts do the delivery of the water, actually physically operate. And that is the arrangement here, and the court will, of course, recall that in 2001, the districts wanted to release the water into the irrigation ditches. And, of course, federal marshals were called in and security fences were built and so forth to physically keep the irrigation districts from accessing that water. Mr. Marzullo, your time has expired, but we'll extend the time, I think, for both parties as long as the court has questions. Certainly. And we will certainly restore your rebuttal time since we've questioned you heavily. I have one more question, and the other judges may also. Could you address the argument made by the government that there is a waiver in this case of the argument of a beneficial property interest under state law? That's the argument made in the supplemental brief. Yeah, happy to address that, Your Honor. They're just wrong about that. Could you elaborate? Well, our contention has always been that Section 8 of the Reclamation Act requires that and determines the existence of water rights under state law. That is, that the water rights have to be acquired under state law. And we have always said, in fact, a simple point is, if you read our brief, you will see that probably the first half of the argument is dedicated to attempting to demonstrate what the Oregon Supreme Court ultimately decided. Oregon law is not different from the law of all these other states, but rather is the same as the law in Nevada, in Nebraska, in the state of Washington, and so forth. Honestly, I think there was a statement made by the trial judge that appeared to confuse our statement based on California versus the United States. That, of course, federal law under the Supremacy Clause would apply if state law were inconsistent with federal law. And because the Reclamation Act requires that the water right be pertinent to the land and that beneficial use be the measure of the right, if Oregon law were, as the trial court said, utterly inconsistent with that, and as the government has said, so that these rights were not pertinent to the land, then Oregon law would have to yield to the supremacy of the Reclamation Act. Fortunately, the Oregon Supreme Court has clarified for us that Oregon law is consistent with the Reclamation Act, that these rights are pertinent to the land, and that they are part of the property rights owned by these plaintiffs. Very good. I just have one more question. Where would the Indian water rights fit into the equation in the calculus of this entire thing? Your Honor, I'm afraid they're a red herring, and I think that's somewhat unfortunate. As we understand it, the federal government, the Bureau of Reclamation decided not to deliver the water in 2001 based on a biological opinion issued by the National Marine Fishery Service and the Fish and Wildlife Service. There was no discussion or mention at that time that this water was somehow needed for Indian uses. Nor was it put to the use of the tribes. We don't contest the rights of the tribes, but they are not part of this case. That was not the basis. The water sitting in the reservoir did not benefit the tribes. The water sent downstream for salmon runs did not benefit the tribes, was not released, as we understand it, because of some perceived treaty obligation. The government has defended this entire case, and the court will recall that whole Sovereign Act discussion, on the basis that the biological opinion was a sovereign act, and that's why they did what they did. We have never seen the Indian water rights issues as any part of this case. I have two housekeeping questions, in a sense. One, I guess it relates to what you touched on, the breach of contract Sovereign Act issue. In its supplemental brief, the government says the Van Brimmer Ditch Company's takings claim is identical to the claim that is presented for determination in the adjudication, and thus is barred from this case by the November 13, 2003 order. What is your response to that? Is that a housekeeping issue, Your Honor? Well, housekeeping in the sense of what's in play, I guess. Yeah, it may be. I ask that question because this whole issue of what's in the adjudication is, I think, a very convoluted one. Originally, the first trial judge in this case, Judge Seifold, issued a stay, saying, I will not consider this case as stayed pending the outcome of the adjudication, which, of course, is still ongoing, and here we are nine years into the case. Then she said, but if you can assert a property right that is not in the adjudication, I'll hear it. That's when we began talking about these beneficial interests. What's interesting is that the next trial judge, Judge Allegra, who made the summary judgment decisions that are under appeal, decided the United States owns all the water rights. Now, in a sense, one might have said, that's not really consistent with this stay order because it, in effect, goes to precisely the key issue in the adjudication. We've always had this sort of awkward situation where the United States keeps saying, we own the entire water right, but you plaintiffs are not allowed to discuss that fact because it's in the adjudication. It seems to me, in short, that it's a complicated issue. I understand, but I don't want to, excuse me for jumping in, but the only question is, as far as I can tell, in the wake of the Oregon Supreme Court's decision, the government has come back and said, after they heard from the Oregon Supreme Court, that the Van Brimmer Ditch Company claim is the same claim in the adjudication as the claim that's asserted here. They don't say that, as far as I can tell, about any of the other plaintiffs. What is your response? I think that's probably right, Your Honor, that the Van Brimmer Ditch Company claim is a pre-1905 right that they had. It probably is the same as the one in the adjudication. And I guess the question is, well, what are the consequences of that? Well, I guess, wouldn't the consequence be that if it's the same claim, it's barred from this case by the November 13, 2003 order? Well, I ask that question, Your Honor, because, as I suggested, then everything the United States has said in this court is also barred. That is, the United States has asserted exactly the same claim before this court that it has asserted in the adjudication, that it, under the 1905 statute, acquired all of the water rights in the Plymouth Basin. So if Van Brimmer can't assert that case here and now, when and where can it assert that claim? Well, I guess they would say that they would assert that that claim, at least for that plaintiff, would be in the adjudication, because it's in there and they're not assert... The government would say, I mean, I don't know what the record is, but assuming that they're asserting a claim in the adjudication, which is identical to the one they have here, they go with the adjudication. The other people's claims aren't the same, so they can go forward. Well, let me make clear, Your Honor, that when we say the same, the adjudication, of course, is not a money claim. It's a title claim. Yeah, all they're saying is that in the adjudication, the United States still asserts that under the 1905 statute, it got all of the water rights. And Van Brimmer says, well, you didn't get our water rights, which actually were pre-1905 water rights. That is certainly true. And the question is, what is the implication of that fact? The trial court, as I indicated, said, well, would have probably said initially, under my stay, Van Brimmer can't assert that claim. But have we, in effect, I guess I'm posing the question, is that original November 13th order sort of superseded by the fact that the second trial judge actually decided precisely the United States claim in the adjudication? Okay. Let me ask you one other claim before I get to my final thing in the contract. And I appreciate the panel's colleagues' indulgence here. The government says in its supplemental brief that you have not challenged the ruling of the Court of Federal Claims insofar as it relates to claims based on patent deeds and the claims of the Klamath Drainage District and the Klamath Hills District Improvement Company based on state water permits. Do you recall seeing that in there? Yes. What is your response to that? Once again, the government is incorrect. The government is asserting that the argument was not sufficiently developed. The court may recall that in the February 2008 argument, we spent a good deal of time talking about those patent deeds. It's certainly amply briefed in this case. It was briefed again and is mentioned in the Oregon Supreme Court. These are the patent deeds in which the United States conveyed whatever water right it had, the legal water right, to the taxpayers. My last question relates to the breach of contract issue. As I understand it, in absolving the government from liability for breach of contract based on the Sovereign Acts defense, the Court of Federal Claims made two determinations. One, it said that the Bureau's response to the ESA problem, Endangered Species Act problem, which arose from the drought, was a public and general act. And two, that the government was not required to demonstrate that compliance with the water delivery contracts was impossible. Now, I know you dispute the impossibility issue, but what is your position, Mr. Marzullo, with respect to the Court of Federal Claims determination that the government's response was a public and general act? Well, I am aware, of course, of the subsequent decision in which Your Honor participated, as I recall, in Cassitas, that found that the issuance of the biological opinion is part of the act itself. However, our position is that that does not complete the analysis because it's not the issuing entity, the wildlife agencies, but rather the Bureau of Reclamation, which, having been issued a biological opinion, is free to either follow it or not follow it. And thus, impossibility is not demonstrated. And the decision of reclamation, there's nothing in the Endangered Species Act that talks about reclamation's decision being mandated by that biological opinion. Did I, and this is the final point, did I correctly characterize Judge Allegra's opinion? Yes, you did, Your Honor. I want to make sure. So we can say that on that point, public and general act or not, that we can say he got it right or he got it wrong. We can decide that. Yes. Okay. Absolutely. All right. Thank you. If I could follow up with one more question on the Sovereign Act Doctrine, and this deals with the impossibility. Let's assume that you are correct in your argument that the common law impossibility feature attaches to the Sovereign Act Doctrine per Justice Souter's plurality opinion in Winstar. All right. How do you, to put this in perspective, we had a discussion the last time the two of you were here of the role of the impossibility defense in a setting in which Congress has allocated to a particular agency the responsibility of making a determination, which in other settings would be made directly by Congress and would establish the basis for impossibility. And if I recall Ms. Barton's discussion of this, she said, well, it's a bit unusual to have the same agency making the policy determination that turns out to render its own conduct under a contract impossible. But there's nothing categorically inappropriate doctrinally about that arrangement, and therefore, if there is a determination delegated by Congress to an agency that the agencies can make a choice, delegated by Congress, and the agency makes that choice, that that's a Sovereign Act that renders, its compliance with its contracts impossible. Do you, A, do you agree with that mode of analysis of the impossibility defense, and B, if so, why doesn't that apply here? Well, maybe, as to A, I don't think I quite agree with it, Your Honor, but I think it's irrelevant. And the reason I say that is that Ms. Barton is speaking as though the same agency made the determination as to jeopardy to the species, and then also made the decision that it would not allow the water in climate flight to be delivered. It's two different agencies. Congress did not delegate any authority to the Bureau of Reclamation. The authority stops with the two wildlife agencies. So the wildlife agencies did what they were delegated responsibility to do, and it was then up to Reclamation to decide how to react. Nothing in the Endangered Species Act compelled Reclamation. When you say it was up to Reclamation to decide how to react, it was Reclamation's statutory duty at that point to react, correct? In other words, where I'm going with this is, isn't this a case? When you look at what Reclamation was saying, here is our duty is to decide what Congress wants us to do about the fish under the Endangered Species Act, vis-a-vis the question of whether to release the water or not. If they concluded that their delegated responsibility in light of the wildlife opinions as to what the effect is going to be, if their responsibility is to cut off the water to the irrigators, isn't that in itself the act that Reclamation is performing that carries the mantle of the Sovereign Act? If that requirement were in the Endangered Species Act, yes, Your Honor, it is not. Section 7 of the Endangered Species Act merely requires Reclamation to consult. Once the consultation is finished, the act says nothing about what Reclamation is to do. So you really do – we went over some of this ground last time, but it wasn't entirely clear to me just where the lines were drawn between the two of you. And correct me if this is not a fair characterization of what you're saying, that whatever might be the case, if the responsibilities on Reclamation were more categorical, if you get this kind of opinion, you must do X, regardless of what the situation would be there. This is not that case because they had a complete open book and they could move in different directions they had a choice. That's absolutely correct, Your Honor. But they couldn't go out and get their own opinion on that basis, though, wouldn't they? No. They'd have to follow the opinion under Section 7 of Bureau of Wildlife. No, that's what I'm saying, Your Honor. There is nothing in the Endangered Species Act that says what Reclamation has to do with that opinion. They have to consult. The opinion has to be issued. Then Reclamation is free to make its choice as to how to proceed. But that's the point at which we got into the complexity, the added complexity of the taking of the species issue. That's correct, Your Honor. That's a different section of the Act, the take of the species. But Section 7 doesn't speak to the take of species. Section 7 speaks to actions which may endanger the species. To elucidate that only slightly, for some period of time the Bureau of Reclamation and certainly other agencies have said and successfully said that they are not required to consult where there is an existing obligation. There's a Ninth Circuit decision, the name of which escapes me at the moment, in which the Forest Service had entered into a contract to allow logging, and then an endangered species was found subsequently, and the court said, well, the legal obligation already exists, so the agency isn't taking any new action, so it doesn't have to act. I think, frankly, it doesn't have to consult under Section 7. I think, frankly, that principle of law would have applied here. This project had been in operation for nearly 100 years, and for Reclamation to wake up one morning and say, gee, I think I have to consult. In fact, that, I believe, was the position Reclamation had taken, counsel can correct me, in the litigation. Admittedly, in the litigation that led to an injunction requiring them to consult, they lost. But that was the position they had taken all along. Mr. Mazzullo, as we did last time, we've made you work overtime, and we will restore your full rebuttal time of three minutes. Thank you, Your Honor. Which means to bring the parties up to parity, I think we have to add 24 minutes to Ms. Barton's time and expose her to having to work overtime as well. Ms. Barton. May it please the Court? I have with me today Todd True, who is Counsel for the Intervenors, but I will leave the argument. I'd like to address three points in my argument, and then in addition, some of the things that were, I had planned to address three points, now I have more, but they are that our argument that the Court should affirm, our alternative argument that the Court should remand, only with respect to the claims that are affected by the Oregon Court decision, and I want to talk about the breadth of the remand and the remand instructions and how the trial court will need to look at the Oregon Court decision. So first of all, we think affirmance is required because the theory of the plaintiffs, as this Court and the Oregon Court understood it correctly, was that there's a uniform federal law and uniform state law, state law based on state water appropriation law, that the beneficial users of water have a property right in that, in the water right. And that question, correctly understood and certified, and correctly understood by the Oregon Court and answered, was answered no. And that is important, especially if you read the concurring opinion, that explains the awkward situation that the Oregon Court was in because of the plaintiff's decision to try to proceed in the context of the adjudication and not to claim any rights in the adjudication. They couldn't look at a lot of their traditional water law, so instead they said we can't look at what's required for an appropriation, we can't look at beneficial use, we're going to look at another body of law that has never been applied to project water rights in terms of interests between the United States and water users, trust law, agency and corporation law. I mean this actually has left us rather floored about how we even deal with this law. I mean it's not anything that's in Nevada or Icky or Nebraska, and clearly we have lots of decisions that say there is not a trust relationship between the Bureau and water users. So we think that... How do you view what the Oregon Supreme Court said about the relationship between the United States and the irrigators versus the way that Nevada against the United States, the Supreme Court characterized the relationship with Nevada? What's the difference? The difference is that the Supreme Court rested on Nevada's law of appropriative water rights, how you appropriate a water right. The water right has to be put to beneficial use and the beneficial users in Nevada hold the water right. Oh, but as... No, not normally. Now because what happened in that case was the United States brought... The original right came about because the United States affirmatively brought a quiet title action in federal court to get the rights confirmed. So the court... That was in the Nevada case. I'm sorry, what? That was in the Nevada case. Right. So in Nevada, the court had to say that we had fair legal title to the rights because we had a document that had our name on it. But basically the court was saying in Nevada, the water users get the water rights. And so you got this document that you went to get, but you got those rights for these people. I didn't apply a trust relationship or agency or corporation. It just rested on Section 8 of the Reclamation Act and state water law. It sounds like it's very similar to the relationship that the Oregon Supreme Court described in this case. No, not at all. The bottom line was the situation that the Supreme Court found the parties in and ultimately left them in in Nevada is... I don't see how it's very distinguishable from the situation that the Oregon Supreme Court saw the parties as being in in this case. Well, it may have come up with the same result, but it's under an entirely different body of law and legal theory. If this case had been... If you had affirmed, as you certainly should have done, rather than certified to the Oregon court, and they had taken it to the Supreme Court, they could not have gone to the Supreme Court and said, we have a trust or agency or corporate relationship with the United States. The Supreme Court would not have let them make that argument. But you, if you do not affirm, are allowing them, after eight years of litigating one theory of the case, to go back and litigate an entirely new theory for probably another eight years. Elizabeth, one thing though, I don't understand what you're saying, but we certified a question to the Oregon Supreme Court asking what's Oregon law? And Oregon came back and said, here is the Oregon law. And isn't it now appropriate for the case to proceed on that basis? No, I disagree, Your Honor. I think waiver in this court still applies. Waiver doesn't apply in the Oregon court. They're not in a litigating position. They can go on and talk about any theory they want. But we asked them to tell us so that we could decide the case. We asked them to tell us what is the law on this point. I beg your pardon? You asked them a question, which they answered no. Then they decided to tell you other law. Well, they answered no, you're right, as part of their analytical analysis, their approach. But then they said, here is what Oregon law is. I mean, we asked them to tell us, we asked them a question, and obviously when we asked that question, we had in mind getting help in deciding the case. And they came back and said, OK, putting the beneficial use alone is not enough. Here's what you have to have. So don't we really, isn't it appropriate for us to now proceed on that basis? I disagree, Your Honor. I don't see why certification gets rid of the waiver rule. They get another bite at the apple because the court certified a question. It was answered no. That was their theory of the case. And now it comes back to the court. And instead of, if it had gone, like I said, up to the Supreme Court and they said, we're not going to go on that, not argued, not decided, we'll send it back to the federal circuit, you would have to have it waived. We're not going to deal with that, you're gone. But no, it went to the Oregon court. And the Oregon court said, no, well, they asked us our opinion on it. So we'll tell them all the law there is, even though a bunch of it isn't anything that the plaintiffs argued until they got to the Oregon court and saw the Fort Benoy case and some other things and tried to make this argument. But let me say another reason. It's not just, I mean, waiver is particularly warranted in this case. Because as I said, this is a strange body of law and a novel theory that we're going to have to deal with and figure out how to apply in this circumstance that in the end may not matter at all, depending on what happens in the adjudication. So we're going to have this long, potentially hypothetical litigation over the nature of some water rights that they may end up being joint holders or the holders of the water rights. What is the state of the adjudication at this point? It seems like they have calmed. Well, my- Anything happening? Yeah, my understanding is that the tribal rights are now underway in the adjudication, being adjudicated at the administrative level. I had, I did- Is it still before the administrative level? It is still before, I think- As it has been since we met last year. It does take a long time, Your Honor. But I have to say one thing about what States typically will not even enforce water rights before an adjudication. You know, somebody's out there taking water that everybody knows they have a later priority, and the state will not do anything about it because they don't have an adjudicated right. I mean, here we're being asked to pay for rights that a state wouldn't even enforce prior to an adjudication. But the individual property owners are not involved in that adjudication, are they, directly? The property owners? Yes. Well, through the district. I mean, I don't know. I actually am not entirely sure. But yes, they have the claims that they are the water- But their claims are only, not individually, they're to the districts themselves. Well, they can only claim the water rights based on the beneficial users. So I don't know if they have, you know, a thousand people, or I have no idea how many users there are on the project, but, you know, on the list, I forget. I'm not really involved in adjudication. So it's the districts, but clearly it's the water users' rights that are at issue in adjudication. The water users' rights would arise under what theory? Under the theory, as in Ickes, or Nebraska, or even, really, what happened in Nevada, that the beneficial users, that it required beneficial users to put the water rights to, and that it lodged in those beneficial users. But that was law that the court couldn't look at, right? And if you read the concurrence, it's very clear about that. It's like, well, all the law that we would normally look at, we couldn't look at here, we had to look at other law, which doesn't really even provide any precedent here, and doesn't really pertain. Now, one more point on affirmance, because it's one more important thing that will have to be dealt with in a hypothetical way, if you send this back, and it always would have been,  Now, it's true that we did not say that the Bureau did not say that it was serving the tribal right when it preserved the water for the fish. But that is the basis, and it couldn't, because the tribe's right hasn't been quantified, right? The tribes, which clearly have a senior right to water for the fish that were at issue in the biological opinion, their rights, we don't know what their rights are until the adjudication, we don't have some intermediate decision by the Oregon court, the federal right, it can't be determined. We could have to end up paying, what are we gonna do for a right that actually was a senior tribal right, that in the future, going forward, we will never, that the United States will have to protect on its trust capacity for the tribe, besides it's a senior right, even under state law, they get their water first for the fish. It's really, and while in the meantime, we've sort of hypothesized a right for the landowners in the project, as if they get a higher right, even though the project right is junior, and it's just a whole bunch of complexities, and for all those reasons, we really think you should affirm. But if you don't affirm, then you certainly need to remand. Now, first of all, Mr. Marzullo said there are no contracts with the landowners. Nobody can get water in the project. I don't ever, under a reclamation project, without a contract. The users had contracts. This is why the Oregon court said, we have to go back and look at the history and the development, and not only of the contracts, but of the Reclamation Act. As I understand it, as I understood Mr. Marzullo saying, yes, there are, the districts have contracts with the Bureau of Reclamation, but these individual landowners don't have any contracts with the Bureau of Reclamation. Now, is he wrong on this? Is that right or wrong? It's partly right today, but the question is, how did they put their water to beneficial use? They got the water initially under the Form A contracts that the homesteaders got. The Form B contracts, these are all in 1906, whatever, that the pre-existing private landholders got. You're calling those contracts. You're talking about the patentees. No, no. See, this is why I have to go back. There were Form A applications and Form B applications, and those were, in a sense, they were pro quo. You get water. They had the same kinds. They had how much water you get, and that you have to repay the project, and you have to pay operation and maintenance fees, and they had these shortage clauses in them. All this stuff that is in the contract today. Now, those applications could have ripened into individual water rights certificates, but in the meantime, Congress started saying, we're going to do the contracting through the deliverer. We're going to get the Bureau, out of the business of being the deliverer and the handling of the contracts. We're going to get an association or a district in between us, and so those rights were then subsumed in the district contracts. In the meantime, there actually were other individual contracts. There's some 250 contracts on the project, so there are some Warren Act, 1911 Warren Act. Is there are contracts between these individual users and the Bureau? Today, our view, they have contracts. They got their water pursuant to contract. It's not like we just gave them water and then someday did a contract with the irrigation district. The individual users had contracts. Then we created- Who were they with? I'm sorry. Who were they with? The United States. They're in the- This is distinct from the patent deeds. The form, yes. I mean, the Form A contracts were for the people who were homesteading, and it's our view that the patent deeds, which said you get the land and you get an appurtenant water right, what they were referring to was the water right in the Form A contract, but they are not the same piece of paper. Our view is that the patent deeds effectively reference the Form A contract and say that you have a right to put water appurtenant to your land. We have never argued that they don't have a perpetual right to put water to beneficial use on their irrigable land. Were they giving that up in these contracts, do you say? Because that was what the Oregon Supreme Court said. They said that third question was whether in their contracts in which the irrigators have relinquished their beneficial and equitable water rights, and they had found in response to- They found, number one, that they put it to beneficial use. Number two, that the United States was in a beneficial relationship with the landowners, and the question they couldn't decide was whether, as I understand it, the landowners had entered into contracts in which they had relinquished or given up these rights. Now, is it your position that there are contracts where they've given up these rights or not? We have two answers to that. One is that we think that analysis is overly simplistic because it ignores the fact that Congress requires water to be delivered only pursuant to contract. It's a congressional requirement. The Oregon court opinion means Congress gave up the contract offenses, such as the Sovereign Act. Just looking at it from the standpoint of the Oregon opinion, I realize we have a problem with that opinion this morning. Accepting it as it is, assume that we're all stuck with it. Are there contracts where the landowners have given up their beneficial use? We would... No, we're not saying they had to give up their beneficial use. That's not... No, I'm just asking you in the context of what the Oregon... I realize we have a problem... Where they gave up their beneficial use? Well, the Oregon... No, there are no landowners in the project who got a contract to put water to use who then somehow altered that contract in a way that said, we don't know, now we no longer have the right to put it to use. But that question is not okay. Well, the Oregon Supreme Court thought so. They thought it was in the case to the extent that they thought, given the references to contract, they were not in a position to say that there hadn't been some kind of surrender. Okay, here's what... Don't you agree that that's what they did  If you will, since I do have time, allow me to just step back for a minute. But first, since I really need to get your answer to that question, is that what the Supreme Court of Oregon was saying, do you think in part three of its response when it said, we understand there's a lot of talk about contracts, we don't have other contracts before us. It's possible, as I read their opinion they were saying, it's possible that there may have been a surrender of rights otherwise possessed by the landholders. Is that your understanding of what they said? Yes, that is my understanding of what they said. Now, I think... And you further say that there are no such contracts. No contracts that completely surrendered. But the contract... Okay, so let me... Okay, now if I can step back. So the issues in this case, really what turns on whether the plaintiffs have a contract or a property right, at least in their mind, is what they get out of a takings claim or something that they don't get out of a breach of contract claim, right? That's what the trial court has to decide. Do they have those things? And those things are, they claim to have a right that is completely free of the terms of the contract that is independent of any terms in the contract, not limited by those terms. And they claim to not have to use contract remedy. Now, that question, those questions are not answered by the Oregon Supreme Court's three-part analysis. Because in the end, it just says, well, then they have some kind of equitable right, but it doesn't say whether the equitable right is limited by the terms of the contract and whether where Congress says you have to have a contract to get water, Congress has also given up its contract defenses. You know, it just doesn't... The concurrence, I think, is very good on this in saying, you know, we just... And actually, in the lead opinion, the court's overall opinion also says we aren't answering the question of whether they have a taking claim, whether there's a compensable property interest. And the question of the parameters of the interest was never addressed. Do you disagree with Mr. Marzullo's and that the contracts are only with the pitch operators and distributors of water? Our view is... No. Property owners? Physically, if you look at the contract, there are contracts with the 14 districts. There are some individual contracts attached to some of those documents of certain type. The Form A and Form B, the very original users, are not. But they were subsumed, right? They did have contracts. It's not like those contracts disappeared, they didn't have any obligations, and their right became disjointed, you know, independent of the contract. Are they subsumed by the ditch contract? Right. Right, by the irrigation district contract. So they all arise under those contracts? They arose under the original contract, right? But they became subsumed and are now under the contract with the irrigation districts. I mean, every time I learn more about this project, it's more complicated. There are even rental contracts for some individuals in the project, annual, renewable. Now, those clearly would not, you know, have a perpetual beneficial interest subject to a taking claim. But it's not entirely clear to me whose rights the districts are claiming a taking claim on. So you're saying, while it's true that certain landowners don't have direct contracts with the Bureau, people from whom they obtained their interest had some kind of a contractual arrangement with the government that has been subsumed into, or is addenda to the Bureau contracts, to the district contracts? Right. Exactly. Some are subsumed without addenda, some are appended to the contracts. It depends on, you know, there's been a whole evolution of different kinds of... I mean, is there, there's no way, I guess on the record for this court to decide that though, right? It's got what? No, no. No. And like I said, we're still learning about that. We haven't moved these issues, or it's less than previously. But you're saying if we agree with you that there was a waiver, we don't even need to get to that point. Exactly. Now, let me, on the remand, I was going into the sort of, as I said, the three-part, if the court, you know, we're prepared if we go back to make our case under Oregon law. But I think what we have to do is look at the court's opinion, all three parts of the court's opinion on question two, and not just the, here's your three-part test, because as I said, it doesn't get you to the answers. Well, what's the scope of that, right? We're not saying they gave it up. We've never said they gave it up. We've always said they have a beneficial interest in the use of water. We've just said it's limited by the contract and it's subject to contract offenses. It's always been our position in this case. And with all due respect to the Oregon court, I mean, this wasn't brief before. You can't do that without also looking at the Reclamation Act and congressional intent. You're going to imply a relationship based on the, if you're going to imply a right based on the relationship between the users and the provider, you've got to look at how that relationship was created and what the limitations are. But I think... Do you disagree then with the Oregon Supreme Court's, I mean, the Oregon Supreme Court seemed to come down and say that the United States, through the 1905 Act and so forth, acquired the water rights for the beneficial, for plaintiff's use and benefit. Do you disagree with that? Well, I think we would say there were broader economic reasons, public reasons to do it. But basically, yes, in order to develop those lands, in order to have those lands irrigated and agriculture grown on them, it developed a relationship, a contractual relationship in a quid pro quo where each party had certain rights and responsibilities. But it didn't just say, we're going to build a project in here, we're giving you some water. So basically, if one follows through the three-factor analysis of the Oregon Supreme Court, it really does come down to factor three. That's where the kind of rubber hits the road, right? Because, I mean, everyone, these water users have been putting the water right to beneficial use. And there was this relationship between the government and the water users. The question is, what is the effect of any of these contractual arrangements? Isn't that really what's left here, factor three? Well, as I've said, factor three only answers, I can't see this court or the trial court coming up with a decision that says, the fact, Congress required water always to be given pursuant to contract it had deals it made with the landowners in order for them to get the water. But under Oregon law, that's just gone. None of that matters. It doesn't matter that Congress prohibits the delivery of water without a contract. Well, that's where your argument would come in, in factor three. No, but Congress didn't have to say, you're saying only if Congress, only if the contract says, we relinquish entirely any right to use this water. We're just glad to get it day by day. That's not what the contracts say. The contracts say, what's most important in the contracts, of course, is the shortage clauses. The contracts say the United States isn't liable for certain shortages, depending on what the provision in the contract is.  authorized the reclamation to do in the contract. So what I was going to say is, I think you have to look at the larger rationale behind the opinion. And I really do encourage you to look at the concurrence. This is based on a very small body of law in Oregon that had nothing to do with the relationship between the provider and the irrigator. It only had to do with third party attacks on the right. And we don't disagree with the results of those opinions here. We're just saying, they don't answer the questions about the relationship between us and the provider and whether their rights are limited by the terms of the contract. But so if you go back to page 1162 in the P3rd site of the court's opinion, they say the court has a very big picture explaining their law. They say the court has sought to determine rights from the structure of a particular relationship and the agreements among the parties to that relationship. And then later on, before they go to the three part test, they say the United States and the plaintiffs remain free to enter into agreements that clarified, redefined, or even altered that relationship. We think those parts, we're not saying don't look at the Oregon Supreme Court opinion. We're just saying they tried to make the job easy by coming up with a three part test that they had never articulated before and never applied before. And that doesn't answer the question here. We think you have to look at this fundamental body of Oregon law because only that way can you take into account whether the agreements clarify the contracts, clarify, redefine, or alter the relationship. And you have to look at the structure, as I said, of the relationship, which is, as I said, they never got water but for a contract that had pre-quote quo obligations and responsibilities on both sides and limitations of liability in the United States. Let me ask you one question on the breach of contract issue. Hopefully I correctly stated what Judge Alegre did. He said that this was a public and general act. And then he said that you want to get your water? Yeah, I have. Oh, OK. He said this is a public and general act. And he said, in addition, the government doesn't have to establish impossibility of performance. And he said he wasn't bound by the suitor opinion in the Winstar case. Now, let's assume that he's correct for the moment that it's a public and general act. And I'm sure you would agree with that. But subsequent to Winstar and subsequent to Judge Alegre's opinion here, hasn't this court made it pretty clear that we do follow the Winstar for justice or plurality opinion? I mean, I believe so. And that isn't contrary. I actually don't remember how Judge Alegre used that part of the opinion because it's not really something that the plaintiffs ever argued. What they argued was the biological opinion was based on bad science. And for that reason, it didn't show that it was impossible. But that's attacking me. But I mean, do you agree now that under our law? We have to show that it's impossible. OK, so you accept that under our law, the government has to show impossibility of performance. That the sovereign act was defined, made it impossible for us as contractors to satisfy. The whole point of the sovereign acts doctrine is to put the United States as contractor in the position of private contractors. I mean, that's what this court has said. And it's clear that it was impossible. Nobody said that if we complied with the biological opinion, which we were under an injunction in the Ninth Circuit to do, that we could deliver the water still. They have only attacked the decision of the Bureau to comply with the biological opinion. But we were enjoined from delivering any water until we got a biological opinion. You're saying there was no alternative to what the government did here. Right, but I don't think the court should rule on that basis. I mean, Mr. Marzullo did talk about, well, you shouldn't have to consult where there's a binding obligation. Well, sometimes we had thought that too, but the Ninth Circuit didn't think so. You were about to say the second thing the injunction said, and you had said the first was that we had to seek a biological opinion. And we had to comply with it. And comply with it in the sense, what exactly does comply mean in the terms of the injunction? I would have to go back and look at that. Because that's where there's some slipperiness. I'm not accusing you of being slippery. I mean, there's some uncertainty, at least in my mind, as to exactly what the obligations were that were imposed on the Bureau. Well, I'm not resting our case on the injunction. Oh, I thought you were. I'm just saying here, no, we never argued that. No, I know, but you were pretty emphatic about saying we didn't have any charges against the Bureau. I'm just saying that in this particular case, I was really trying to address Mr. Marzullo's argument that he's never braced before, that we didn't even have to consult. We did have to consult under the Ninth Circuit because there's discretion and then we have ongoing obligations or whatever. Clearly, reclamation had to consult. And it has to consult to avoid jeopardy. It has to take steps to avoid jeopardy under Section 7. Here's the whole question about what do you do about a discretionary act? If you're going to put reclamation as a private contractor in the same position, reclamation as contractor in the same position as other private contractors, other private contractors would have to, would not have gotten the water because reclamation in its governmental capacity would have decided under the Endangered Species Act it couldn't deliver the water. So when reclamation makes that decision in its sovereign responsibility, then it is protected, just as it would be a district could use that as a defense to the landowners. But you would still have to prove the impossibility. Right, right. I think in this court, definitely, we have to show that that was the cause, that it was a sovereign act that caused us not to deliver the water. And I think that was the distinction with Stockton East. In Stockton East, the court said, you didn't show it was impossible. You didn't show that even if you complied with the CBPIA, with the sovereign act, that you couldn't deliver the water. And if you look at that opinion, actually there's the state part of the case that's where we say we couldn't deliver water because of state actions. And they say, you know, you didn't show, that you still had water left over. And so that case, Stockton East, which is still pending on the hearing, and addressed this question after Casitas decided it, which should essentially provide binding precedent for this case. Stockton East is just distinguishable. I guess what you would want us to do on this breach of contract issue is say number one, the court of federal claims was correct in finding a general public act here. And then number two, send it back to give the government an opportunity to demonstrate under Carabetta, Casitas, the other cases, that contract performance was impossible. No, actually, with all due respect, the plaintiffs have never argued that contract performance was not impossible. I tried to explain that in the brief. What they said was not, they said it wasn't impossible because the biological opinion was wrong, or because we didn't have to comply with the biological opinion. I'm saying they've never said, if, they're never saying, you could have complied with the biological opinion, and there was water left over to give to us. That's, right, that's the impossible. They've never said that. That's just not an issue in this case. That's the impossibility question, right? Did the Bureau's compliance with the biological opinion make it impossible for it to deliver the water? Yes, and they've never said otherwise. They've said the Bureau shouldn't have complied with the biological opinion. It didn't have to. It could have done something else. That's a part of the Sovereign Act, though. But it sounds like that would be something for the court of federal claims to sort out. No, they've never, please give me one waiver argument. They have never, ever, ever. You thought of one to a customer? They're done with just one? Well, you know, if it's the only one I can get. No, I don't know. I don't remember what, I mean, they never argued this, so Judge Allegra didn't address this. But he said impossibility of performance was impossible. But that document was off the table. But they didn't argue, and they didn't argue in this court. You scour their briefs, you know, and I made this argument in our brief as appellee. The only thing they complained about was the National Academy of Science report came back and said you didn't have to save all that water for the fish. It was too much water. Well, that's attacking, and not only is it attacking, you know, something that can't be attacked in this court, which is the validity of a Sovereign Act, which they had tried to do in the Ninth Circuit and failed, but it's just part of the Sovereign Act, right? So they've never, ever said you could, and it was a critically dry year, and we had to leave a lot of water in the lake for the fish and send a lot of water downstream for the salmon, and nobody was like, you're just letting our water sit in the lake and not giving it to us. It's all about a Sovereign Act thing. It is, and just because Judge Allegra may have had a flawed, you know, language in his opinion, but the court refused judgment, not opinion. As I understand, you said impossibility of performance was not a component of the Sovereign Act defense, right? You know, I just haven't paid a lot of attention to that because they haven't argued it, and if you read my brief carefully, they say they're making an argument that we didn't show impossibility, but when they say what we didn't show, they say we didn't show that there was another way for the biological opinion, that they're basically saying the biological opinion was wrong. They're not saying, you could have, they've never said you could have complied with the biological opinion and given us water. They have never said that. I wanted to say one thing on the Van Brimmer right, which was, I wanted to say two things. One is that, you know, this, the Van Brimmer and the water permit, this is another, in the opening brief they said the trial court didn't adequately account for these rights. That's all they said. They never gave us an argument in this court. They just, so aside from that, the court should just consider it right. It is the same right. They're claiming, you know, an ownership right is in the adjudication, and while Mr. Marzullo said we shouldn't get the benefit of that because then Judge Allegra, you know, went on with an analysis that said we hold the water right, it's the burden, the burden of the plaintiffs to establish their water right. If Judge Allegra said we have a water right that could be recognized in the adjudication, that's meaningless, right? Nobody cares whether we have a property right in a taking claim. It's whether they have a right, right? So it could be a defense of ours. Oh no, the right is ours. We didn't bring a summary judgment motion. We asked to stay the whole proceeding. They brought a summary judgment motion strategically to say we want to proceed now, so we will proceed on the grounds of, we won't claim anything that's determinable in the adjudication. We won't make those arguments. So it's their burden. That burden, that summary judgment ruling doesn't go away that was brought at their own request because we could make defenses that had to do with rights that are in the adjudication. That's completely their burden to establish their rights, and they can only do it on rights that are not in the adjudication. Under our, just one question. Under our procedure in the adjudication, if the administrative proceedings say that you have X rights to the water, can that be changed by the judicial process? Yes. I believe, because we have litigation over this actually, that the Oregon administrative proceeding is preliminary to a determination in district court. I believe once there is a state administrative determination, which could be at the end of 2012, I think there's some hope that the tribal rights will be wrapped up and that the state is preparing everything else to be ready to go when those are wrapped up. There can be exceptions filed to the district. This is my understanding. Okay, I haven't looked at the law myself. This is what I'm told. Exceptions filed in state court, not district court. And then it goes from there. And then I think when there's a decision in that court, then it's just the regular appeals process. Thank you. Thank you. We'll hear a follow-up from Mr. Marzullo. Thank you, Your Honor. I'd like to correct a few I'm sure unintentional misstatements by counsel for the government. The government did bring summary judgment, and the government did argue that the plaintiffs lacked any property right, that any rights that they might have had to derive from the contract, specifically the district contract. That's the case that they brought in the trial court, and that's the case that they argued here. The injunction in question did not require compliance with the biological opinion. It only required consultation. Once the consultation was completed, the government moved for and received a dissolution of that injunction. Third, the Oregon Supreme Court did discuss Oregon Water Law. I'm utterly confused about counsel's contention that the Oregon Court did not look at Oregon Water Law. At least the copy of the opinion I have has a whole section on the common law of water in Oregon, starting with the appropriative process, the three requirements for the appropriation, the discussion of notice leading the Cary Act, leading up to the 1905 statute. The decision of the Oregon Supreme Court is squarely an Oregon Water Law decision. It talks about notice, it talks about appropriation, and it talks about situations in which the appropriator is one person and the beneficial user is another. As I understand what Ms. Barton was saying on the contracts issue, as I understood her to say, she's saying it's true the individual water users didn't have contracts with the Bureau, but their predecessors in interest had had some kind of patent deeds or contracts which became subsumed in contracts between the users and the Bureau. Now that's what I understood her to be saying. What is your response? Did you understand that to be what she said? Yes, Your Honor. And what's your response to that? There are these documents called Form A and Form B contracts. To be more appropriate, they are titled Form A, Application for Permanent Water Rights, and Form B, Application for Permanent Water Rights. These were forms that were used by the Bureau of Reclamation on all of its projects. They're discussed specifically in the Nevada case. In fact, the Oregon Supreme Court also mentioned, well, we're not talking about these Form A and B contracts because the Supreme Court has noted that those Form A and Form B contracts, what counsel was talking about, tend to indicate that there is a So these were applications that were made by people who originally moved onto the property, Your Honor, and they covered the initial situation before the original settler had been on the land for five years, at which point, of course, the water right vested under the Reclamation Act. If there had been use of the water during that time. Yes, precisely. So they covered that interim period. None of these plaintiffs except for Mr. Robeson, who's one of the individual plaintiffs, and we actually have a Form A and Form B in the record. The court can take a look at them. None of these other individual plaintiffs had those forms, and of course, once Mr. Robeson got a deed of the water right, he had been there for the requisite period of time, had applied the water to his land. The application for the water right, in effect, I guess counsel used the word merged. I have no problem with that. But the bottom line is, the Form A and B have no language that could be construed as cutting against the beneficial interest. In fact, the Supreme Court held in Nevada versus United States that the demonstrate that the water user did, in fact, have a beneficial water right. So counsel, and that's what I meant, Your Honor. When I said there were no existing contracts, yes, there were applications back 50 to 75 or 100 years ago by some people. The existing contractual relationship is between the United States and the districts, and counsel kept saying, well, the Reclamation Act requires a contract for the delivery of water. Yes, it does. And since 1922 or 26, that Congress has required that that contract be with a water district, not with the water user. So I stand by what I told you, Your Honor, originally. So would you agree then that those contracts or those rights have been subsumed under the agreements with the water district? What rights are you talking about, Your Honor? The rights that were provided under Form A and Form B, whatever those were. Well, no, they haven't been subsumed. They've been they have been mooted, if you will. Those were original applications for water rights. They have nothing to do with the delivery contract. They were applications that led to Form A's led to the issuance of a patent deed. Think of it if you will. So you disagree then with the government's representation of that? Certainly with their interpretation. What Form A was subsumed in, if you want to use the word subsumed, Your Honor, it was subsumed in the patent deed. Form A said, I apply for a permanent water right from the United States to be evidenced by a patent deed. Five years later, having applied the water faithfully, the United States issued a patent deed which said, here is your permanent water right. Form B was exactly the same thing for people who already owned title to the land, so they wouldn't be getting a deed from the United States. What they were to get was a certificate of water rights. Both the same thing. At that point, the application was no longer important because the owner of the land held either the patent deed or the water rights certificate. There was one on the impossibility of performance issue. Ms. Martin made a waiver argument there. She said that you have not asserted that performance was impossible in the sense of we could have done something else other than not release the water. I'm afraid, once again, she's not read our brief carefully, Your Honor. What we discussed was that over a period of roughly 10 years, we were actually addressing there the injunction argument that the government made that that, too, was a sovereign act. What we said is that over the years, reclamation instead of taking the appropriate steps to protect the fish had simply ignored its obligations until they got so far in a hole that the district court finally issued an injunction and said stop delivering water until you consult. Now, as I said, she was incorrect, and we'd be happy to supply the court with a copy of the injunctive order. She was incorrect in saying, and that the injunction required compliance. It did not. It only required consultation because the Endangered Species Act does not require the Bureau of Reclamation to comply. If the court has no further questions. Thank you. Thank you, Your Honor. Thank you, Counsel. The case is submitted. The Honorable Court is adjourned from day to day.